UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **EPCO CARBON DIOXIDE PRODUCTS, INC.** | * | **DOCKET NO. 08-1535** |
| **VERSUS** | * | **CHIEF JUDGE JAMES** |
| **CANADIAN NATIONAL RAILWAY COMPANY, ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are Motions to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Defendants Illinois Central Railroad Company ("Illinois Central")[1] [Doc. #'s 13, 43] and Kansas City Southern Railway Company ("Kansas City Southern") [Doc. #'s 17, 45]. For reasons stated below, it is recommended that the motions be **GRANTED** and that this case be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

## BACKGROUND

On October 15, 2008, Plaintiff EPCO Carbon Dioxide Products, Inc. ("EPCO") filed the above-captioned lawsuit on the basis of federal question jurisdiction. In its original complaint, EPCO stated that "[t]he issue before the Court involves federal law specifically tariffs pertaining to demurrage all of which is regulated by federal law including the Interstate Commerce Commission." [Doc. #1, ¶ 5]. The complaint alleged that EPCO entered into a transportation agreement wherein Defendants Illinois Central and Kansas City Southern agreed to provide rail

---

[1] Subsequent to the time this case was filed, Illinois Central was substituted as a defendant in this action in place of Canadian National Railway Company [Doc. # 11].

1

service to EPCO from its facility in Brookhaven, Mississippi, to Hughes Springs, Texas, and that the instant action arises out of such contract. According to the complaint, the purpose of entering into the contract was to facilitate EPCO's processing and delivering carbon dioxide to Pilgrim's Pride Corporation. The complaint alleged that when the contract was entered into, Defendants provided rail service from their Jackson, Mississippi terminal to EPCO's Brookhaven facility on a daily basis and that approximately three cars per day were being loaded at the facility; however, although all parties initially complied with the contract and the rail service was adequate, Defendants subsequently arbitrarily reduced the rail service from Jackson to the Brookhaven facility.

As a result of the reduced service, alleged EPCO, rail cars began to "bunch up" at Shreveport, Louisiana, and Jackson, Mississippi, resulting in EPCO receiving demurrage charges from Illinois Central for those rail cars that were on a side track waiting to be filled at EPCO's facility on the spur, which would only maintain three cars at a time. EPCO alleged that it categorically denied owing any demurrage charges and objected to the payment thereof in as much as the demurrage charges were the direct result of the reduced service of Defendants. In order to resolve the dispute, EPCO entered into an agreement with Illinois Central providing for a demurrage charge of $25,620 to allow for the placement of ten rail cars on the side track for a period of one year. The agreement further provided that any number of rail cars in excess of ten resulted in additional billing for demurrage charges. However, according to EPCO, despite the agreement, rails cars once again started to "bunch up." After receiving demurrage charges for several months, an EPCO representative met with a representative of Illinois Central, at which time Illinois Central categorically denied any liability in causing the bunching, and instead

indicated that the issue was the result of a change in the switching and train make up practices of Kansas City Southern.

EPCO alleged that the additional demurrage charges were directly related to the rail service provided by the defendants and were contrary to what was initially contracted or contemplated between the parties. As redress, EPCO's original complaint sought a declaratory judgment to the effect that no demurrage charges may be assessed to EPCO when such charges relate to the service of the defendants and that no future charges be made by the defendants for demurrage charges either on a contractual basis or pursuant to any tariff should such charges in any way result from the service or lack of service on the part of Defendants.

On January 14, 2009, Defendants filed a motion to dismiss for lack of subject matter jurisdiction on the ground that EPCO's claims necessarily involve the regulation of common carrier rail transportation and, therefore, are within the exclusive jurisdiction of the Surface Transportation Board ("STB") pursuant to the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101, *et seq*. [Doc. #'s 13,17]. The undersigned ordered EPCO to clarify whether such claims were based on an allegation of breach of contract or solely on the propriety of the demurrage charges without regard to the original contract or demurrage contract [Doc. # 20].[2] In response to the Court's order, EPCO filed an amended complaint alleging that it

---

[2] Neither the original contract nor the demurrage contract contained any service obligations on the part of Defendants [Doc. #1, Ex. A, B]. The undersigned also sought additional briefing from both parties regarding (1) the distinction between contract-based rail carriage and tariff-based rail carriage and how the service obligations of a rail carrier are determined in each circumstance; (2) the service obligations of Defendants under the original contract and how such obligations were determined; and (3) the service obligations of Defendants under the tariff and how such obligations were determined. *Id*.

and Illinois Central had entered into a verbal agreement in which Illinois Central agreed to provide services seven days per week, year round [Amended Complaint, Doc. # 29]. EPCO's amended complaint further alleges that the entire basis of its claim is that Illinois Central contracted with it to provide a certain level of rail service, specifically daily transportation of its cars, and that its failure to provide the service has resulted in damages in the form of the complained of demurrage charges. EPCO specifically alleges a state cause of action for breach of contract resulting from Illinois Central's alleged service failures.[3] EPCO states that it has never had any contract with Kansas City Southern, either verbal or written,[4] and that while there may be a contract or agreement between Illinois Central and Kansas City Southern, EPCO is not privy to that agreement or bound by the terms or conditions thereof.[5] In response to EPCO's

---

[3] EPCO contends that the original and amended complaint involve two issues: (1) A state cause of action alleging a breach of contract that specifically consists of an agreement between the parties for rail service at the rate of seven days per week and the damages that have accrued as a result of the railroad's failure to provide that level of service and (2) the validity of charges being made by the defendants for "storage/demurrage" charges arising out of the storage of complainants rail cars which is the direct result of the reduced service [Doc. # 30, *Supplemental Memorandum in Opposition to Motion to Dismiss*]. It is somewhat unclear, in the wake of EPCO's amended complaint, what relief EPCO is seeking. With regard to damages, the amended complaint states only that Illinois Central's breach of contract has "resulted in direct financial loss to EPCO . . . consisting of higher transportation costs by truck as compared to rail and these costs would not have been incurred had the defendant, Illinois Central Railroad Company, continued to provide the rail service it contracted to provide." [Amended Complaint, ¶ 35]. Presumably, however, EPCO is seeking, as it did in the original complaint, some type of resolution, by declaratory judgment or otherwise, of the issue of whether Illinois Central and/or Kansas City Central are entitled to collect the disputed demurrage charges.

[4] It should be noted that this contention is curious given that the confidential transportation agreement clearly indicates that EPCO, Canadian National, and Kansas City Southern were parties to the agreement [Doc. # 1, Ex. A].

[5] EPCO notes, however, that it has been receiving invoices from Kansas City Southern for demurrage charges since April 2008.

amended complaint, Defendants maintain that EPCO's claims, to the extent they are not based in contract, should be dismissed for lack of subject matter jurisdiction based on the fact that such claims are within the exclusive jurisdiction of the STB and, to the extent that they are based in contract, should similarly be dismissed for lack of subject matter jurisdiction for lack of federal question or diversity jurisdiction.[6] Defendants have each filed a second motion to dismiss EPCO's amended complaint for lack of subject matter jurisdiction [Doc. #'s 43,45].

## LAW AND ANALYSIS

*A. 12(b)(1) Standard*

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)(quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See, Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). In fact, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996)(citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984)).

*B. Federal Question Jurisdiction*

"The presence or absence of federal- question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal

---

[6] Defendants do not, however, concede that there was any contract between the parties at the time the disputed demurrage charges were allegedly accrued or abandon their primary argument that all of EPCO's claims are within the exclusive jurisdiction of the STB.

5

question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474, 118 S.Ct. 921, 925 (1998)(citations omitted). Federal question jurisdiction is properly invoked when plaintiff pleads a colorable claim "arising under" the Constitution or laws of the United States. *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 126 S.Ct. 1235 (2006).

    *C. The Interstate Commerce Commission Termination Act of 1995*

The jurisdictional issue in this case centers around the ICCTA, which abolished the Interstate Commerce Commission and created in its place the STB "to perform many of the regulatory functions formerly performed by the Commission," including the regulation of rail transportation. *Franks Inv. Co. v. Union Pacific R.R. Co.*, 534 F.3d 443, 445 (5th Cir. 2008). Pertinent to the issue at bar are two provisions of the Act that define the jurisdiction of the STB. Section 10501(b) states as follows:

> (b) The jurisdiction of the [Surface Transportation] Board over-
>
> > (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> >
> > (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> *is exclusive*. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b) (emphasis added). Therefore, according to this provision, the STB, and only the STB, has jurisdiction over regulation of transportation by rail carriers. However, as

provided in section 10709 of the Act, the STB does not have jurisdiction over breach of contract claims regardless of whether they involve rail transportation:

> (a) One or more rail carriers providing transportation subject to the jurisdiction of the Board under this part may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions.
>
> * * * *
>
> (c)(1) A contract that is authorized by this section, and transportation under such contract, shall not be subject to this part, and may not be subsequently challenged before the Board or in any court on the grounds that such contract violates a provision of this part.
>
> (2) The exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree. This section does not confer original jurisdiction on the district courts of the United States based on section 1331 or 1337 of title 28, United States Code.

49 U.S.C. § 10709; *see also Savannah Port Terminal R.R., Inc.–Petition for Declaratory Order*, STB Finance Docket No. 34920, 2008 WL 2224904, *3 (May 29, 2008) ("Transportation services under such a rail transportation contract are not subject to the Board's jurisdiction."). Accordingly, rail transportation provided under a contract entered into pursuant to section 10709 is not subject to the jurisdiction of the STB, while rail transportation not performed under contract, also known as common carriage, is subject to the exclusive jurisdiction of the STB.

In the case *sub judice*, given that EPCO has amended its complaint to allege purely a state law breach of contract claim based solely on the allegation that Illinois Central agreed to provide service on a daily basis and has failed to do so, and given that EPCO now contends that this case should be dismissed based on the fact that there is no federal question or diversity jurisdiction,[7]

---

[7] Both parties contend that when EPCO substituted Illinois Central for Canadian National, diversity of citizenship was destroyed as both EPCO and Illinois Central are Illinois corporations.

EPCO's state law breach of contract claim should be dismissed for lack of federal subject matter jurisdiction.[8] *See e.g. New England Southern R.R. Co. v. Boston and Marine Co.*, 2008 WL

---

*See Poly Trucking, Inc. v. DHL Exp. (USA), Inc.*, 2007 WL 2815845, *1 (W.D.La. Aug. 28, 2007) ("A plaintiff's joinder of a non-diverse party destroys diversity jurisdiction, notwithstanding complete diversity of the parties at the time suit was filed.").

[8] It is also unclear from EPCO's amended complaint whether it is contending that its claims against Kansas City Southern are also entirely based on Illinois Central's alleged breach of contract. As Kansas City Southern notes, EPCO states in its complaint that it never had a contract with Kansas City Southern; accordingly, Kansas City Southern argues that the relationship between it and EPCO was that of common carriage and therefore is within the exclusive jurisdiction of the STB. To the extent that EPCO's claims against Kansas City Southern, or Illinois Central, are not based in contract, EPCO has provided this Court with no basis for any other conclusion than that such claims relate to regulation of common carrier rail transportation and, therefore, would be subject to dismissal as within the exclusive jurisdiction of the STB under the ICCTA. *See Capitol Materials Inc.–Petition for Declaratory Order*, STB Finance Docket No. 42068, 2004 WL 771676, *1 (Apr. 9, 2004) ("Demurrage charges are subject to Board regulation under 49 U.S.C. 10702, which requires railroads to establish reasonable rates and transportation-related rules and practices. In addition, pursuant to 49 U.S.C. 10746, rail carriers must compute demurrage charges, and establish rules related to those charges, in a way that will facilitate freight car use and distribution and promote an adequate car supply."). Moreover, EPCO's reliance on the fact that carbon dioxide is a commodity exempt from the regulation of the STB, *see* 49 C.F.R. 1039.11(a), is misplaced given that it is clear that even exempted commodities are within the STB's jurisdiction, *see Pejepscot Indus. Park, Inc.–Petition for Declaratory Order*, STB Finance Docket No. 33989, 2003 WL 21108198, *8 n.14 (May 9, 2003); *G. & T. Terminal Packaging, Co. v. Consolidated Rail Corp.*, 830 F.2d 1230, 1234-35 (3rd Cir. 1987) (Interstate Commerce Commission (predecessor to STB) retains jurisdiction over exempt traffic).

Finally, the undersigned notes that at least one court has held that despite the exclusive jurisdiction language contained in section 10501(b), with regard to claims brought for violations of section 11101(a) of the ICCTA, which requires rails carriers providing transportation under the jurisdiction of the STB to provide such service upon reasonable request, the STB and the courts have concurrent jurisdiction. *See Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195 (1st Cir. 2000). However, although EPCO noted *Pejepscot* in its original memorandum in opposition to Defendants' motion to dismiss, it has made no argument on such ground since amending its complaint to allege a breach of contract claim and contending that this case should be dismissed for lack of subject matter jurisdiction, nor has it made any attempt to demonstrate that it is making any claim pursuant to section 11101(a) or any other section of the ICCTA which could be read to expressly confer jurisdiction on the courts.

5450276, *2 (D.N.H. Dec. 31, 2008) (noting that a plaintiff's exclusive remedy for a contract was an action in state court because complete diversity did not exist between the parties and the STB does not hear contract disputes).[9]

After contending that this Court lacks subject matter jurisdiction over its claims, EPCO subsequently suggests that this Court refer the issue of whether there is a tariff or a contract and whether the defendants may legally assess the disputed demurrage charges to the STB. Although EPCO is correct that courts are permitted to refer issues to the STB for resolution, EPCO's own characterization of its claims and its contention that this Court lacks subject matter jurisdiction over such claims belies the appropriateness of any such action by this Court. First, as discussed above and conceded by EPCO, section 10709 dictates that the STB does not have jurisdiction over contract claims, and the STB "typically defers to the courts with respect to whether a valid rail transportation contract exists." *PCI Transp., Inc. v. Fort Worth & Western R.R. Co.*, STB Finance Docket No 42094, 2008 WL 1840576, *4 (Apr. 24, 2008) (dismissing an action for lack of jurisdiction based on the fact that it was based entirely in contract); *PCS Phosphate Co., Inc. v. Norfolk Southern Corp.*, 559 F.3d 212, 220 (4th Cir. 2009) ("The STB itself has emphasized that courts, not the STB, are the proper forum for contract disputes, even when those contracts cover subjects that seem to fit within the definition of 'rail transportation.'"). Therefore, given EPCO's

---

[9] The undersigned notes that there could be an issue in this case as to whether the alleged verbal agreement relied upon by EPCO fits within section 10709 's definition of a rail transportation contract, which is "a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions," 49 U.S.C. § 10709(a), such that it would deprive the STB of jurisdiction. *See e.g. Savannah Port* at *3 (finding by the STB, in a case involving disputed demurrage charges allegedly relating to railroad's service and following referral of certain issues from state court, of no rail transportation contract and, therefore, no bar to the Board's consideration of the issues referred).

contention that it is asserting a breach of contract claim and that the entire basis of its claim is that Illinois Central contracted to provide a certain level of service and has failed to do so, there is no reason to believe that the STB would exercise jurisdiction over EPCO's claims as they currently read.

Moreover, a referral to the STB would be accomplished by way of the doctrine of primary jurisdiction, which requires that the referring court have original jurisdiction over the claim before it. *See La. Envtl. Action Network v. LWC Mgmt. Co.*, Inc., 2007 WL 2491360, *6 (W.D.La. Aug. 14, 2007); *Entergy Services, Inc. v. Union Pacific R.R. Co.*, 99 F.Supp.2d 1080, 1089 (D.Neb. 2000) (noting that "the primary jurisdiction doctrine only applies where the agency and the courts have concurrent jurisdiction" and thus declining to refer a breach of contract action, over which it had jurisdiction pursuant to diversity of citizenship, to the STB given the STB's express exclusion of contract actions from its jurisdiction). In this case, EPCO has not made any attempt, subsequent to its amended complaint, to demonstrate that this Court has subject matter jurisdiction over any of the asserted claims, and in fact expressly states that no such jurisdiction exists.[10] Under the facts alleged, the appropriate action is for the Court to dismiss EPCO's claims for lack of subject matter jurisdiction.[11] Because the recommended

---

[10] Moreover, as Defendants note, given the still somewhat uncertain nature of EPCO's claims, it would be difficult for this Court to formulate discrete issues to be referred to the STB.

[11] In arguing for a referral to the STB, EPCO cites *Illinois Cent. R.R. Co. v. South Tech Dev. Warehouse, Inc.*, 337 F.3d 813 (7th Cir. 2003), which involved a three-party relationship between the railroad, South Tec Warehouse, and a printing company. In order to secure the printing company's business, the railroad introduced the company to South Tec which could store the company's paper shipments while they were en route to its facility. *Id*. at 814. The railroad and the printing company entered into a contract detailing the arrangement between the parties, as did South Tech and the printing company; however, there was no contract between South Tec and railroad. *Id*. The railroad eventually sued South Tec for unpaid demurrage

10

dismissal is without prejudice, it will leave EPCO free to pursue its claims in a court of competent jurisdiction or, as it has indicated it desires to do, with the STB. *See PCI Tranp*. at *3 ("The Board has primary authority to determine its own jurisdiction.").

For the foregoing reasons, this Court lacks subject matter jurisdiction over the instant action. Accordingly, **IT IS RECOMMENDED** that Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction [Doc. #;s 13, 43, 17, 45] be **GRANTED** and that this case be **DISMISSED** *without prejudice* for lack of subject matter jurisdiction.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

---

charges that it claimed were the result of South Tec's failure to promptly unload railcars at its facility. *Id*. at 815. South Tec denied liability for the charges, arguing that the printing company, which it joined as a third party, was liable for the charges. *Id*. Upon motion of the parties, the district court referred three issues to the STB: (1) whether the railroad's demurrage rate was unreasonable, 2) whether the method by which the railroad calculated the charges was unreasonable and 3) whether the practice by which the railroad demurrage charges accrued was discriminatory with respect to shippers such as the printing company. *Id*. at 815-16.

The undersigned finds that case to be distinguishable from the one at bar. Although contracts for rail transportation were involved in the case, there was no contract between the two primary parties, and there is no indication, unlike in the case at bar, that the entire basis of any party's claim was a state law breach of contract allegation. Moreover, the district court did not ask the STB to determine the existence of a contract or interpret such contract, which is what EPCO is requesting in this case, and which the STB has repeatedly declined to do. Finally, again, EPCO has expressly conceded that this Court does not have subject matter jurisdiction over this action. Therefore, the undersigned does not interpret the above-cited case as supporting a referral to the STB under the circumstances of this case.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of June, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE